# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**JARIUS WINGARD**                                    **CIVIL ACTION NO.**

**VERSUS**                                            **21-122-EWD**

**STATE OF LOUISIANA,**                               **CONSENT**
**THROUGH THE DEPARTMENT OF**
**PUBLIC SAFETY & CORRECTIONS, ET AL.**

## RULING AND ORDER

Before the Court are a Motion to Dismiss and For a More Definite Statement[1] ("DPSC's Motion"), filed by Defendants the State of Louisiana through the Department of Public Safety and Corrections ("DPSC") and Ryan Woolfolk[2] ("Woolfolk"), and a Motion to Dismiss and For a More Definite Statement[3] ("Vannoy's Motion"), filed by Defendant Darrel Vannoy ("Vannoy"). Plaintiff opposes the Motions.[4] DPSC and Woolfolk have filed a reply memorandum.[5] Oral argument is not necessary.[6]

As explained further, DPSC's Motion will be granted in part, dismissing some claims with prejudice. As to the claims dismissed without prejudice, Plaintiff will be given leave to file an amended complaint, providing more factual information to support those claims, if possible. The Vannoy Motion, which asserts the same arguments as those asserted in DPSC's Motion, will be denied as moot since DPSC's Motion will be granted.[7]

---

[1] R. Doc. 4. DPSC's Motion refers to dismissal of claims against "Warden Timothy Hooper;" however, Defendants clarified in reply that the reference to Hooper was a mistake and DPSC's Motion (and obviously, Vannoy's Motion) seeks dismissal of the claims against Vannoy. R. Doc. 12, p. 1.

[2] At the time of the filing of DPSC's Motion, Defendants contended that the only individual defendant who had been served was Woolfolk. *See* R. Doc. 4, p. 1, n. 1. Information provided by Plaintiff shows that Defendant Randall Holden was served on February 3, 2021, before DPSC's Motion was filed. R. Doc. 8-1.

[3] R. Doc. 20.

[4] R. Docs. 8, 22.

[5] R. Doc. 12.

[6] Plaintiff has requested oral argument, which is discretionary. R. Docs. 8, p. 18 and 22, p. 10; Local Rule 78(b). The briefs present adequate argument and analysis, such that oral argument is not necessary.

[7] *Compare* R. Doc. 4, pp. 1-2, ¶¶ 1, 3-5 *with* R. Doc. 20, p. 1, ¶¶ 1-4 (both seeking dismissal of the 42 U.S.C. § 1983 claim and Plaintiff's state law claims against Vannoy, and a more definite statement of Plaintiff's claim under "42 U.S.C. §§ 1981, et seq.," and Plaintiff's conspiracy claims). As Vannoy's Motion is subsumed in DPSC's Motion, this Ruling singularly refers to DPSC's Motion. The requests for a more definite statement are not filed in the alternative, but are moot considering the Court's rulings either dismissing Plaintiff's claims with prejudice, or without prejudice with leave

## I. BACKGROUND

On January 25, 2021, Plaintiff, an inmate currently incarcerated at the Louisiana State Penitentiary at Angola ("LSP"), filed this action in the Twentieth Judicial District Court for the Parish of West Feliciana asserting federal and state law constitutional and tort claims against DPSC, LSP, Vannoy in his official capacity, and Assistant Warden Brent Thompson ("Thompson") (the "Supervisory Defendants"), as well as Captain Randall K. Holden ("Holden"), Sergeant Brian Smith ("Smith"), and Woolfolk (the "Acting Defendants").[8]  DPSC removed the case to this Court on February 25, 2021 asserting federal question jurisdiction under 28 U.S.C. § 1331.[9] All properly-named Defendants have been served and have appeared.[10]

Plaintiff's version of the circumstances giving rise to this case are as follows:  On January 20, 2020, Plaintiff was escorted by Smith and Woolfolk to a cell in Camp C, Tiger 1 of LSP for the purpose of being double bunked with another inmate.  Plaintiff and the other inmate objected to the double bunking because both had previously been placed on suicide watch after acting on suicidal

---

to amend, to the extent Plaintiff fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and as permitted by 28 U.S.C. § 1915A. Given the liberal pleading standard set forth in Rule 8(a), Rule 12(e) motions are disfavored. *Murungi v. Texas Guaranteed,* 646 F. Supp. 2d 804, 811 (E.D. La. 2009)*,* citing *Mitchell v. E–Z Way Towers, Inc.,* 269 F.2d 126, 132 (5th Cir. 1959); *Gibson v. Deep Delta Contractors, Inc.,* No. 97–3791, 2000 WL 28174, at *6 (E.D. La. Jan. 14, 2000). Furthermore, the trial judge is given considerable discretion in deciding whether to grant a Rule 12(e) motion. *Murungi,* 646 F. Supp. 2d at 811, citing *Newcourt Leasing Corp. v. Regional Bio–Clinical Lab., Inc.,* No. 99–2626, 2000 WL 134700, at *1 (E.D. La. Feb. 1, 2000).

[8] R. Doc. 1-1, pp. 1-2.  Plaintiff also named John Doe and ABC Insurance Company.  *Id.* It is unclear whether Smith and Thompson are current employees of DPSC. R. Doc. 23, p. 3.

[9] R. Doc. 1,¶¶ 6-7.  Plaintiff previously sought remand on the ground that his state law claims against DPSC and the other official capacity Defendants (which the Complaint explicitly identifies as Vannoy and which implies is also Thompson) are barred from being raised in this Court by the Eleventh Amendment, which these Defendants had not explicitly waived. In the alternative, Plaintiff sought a finding by this Court that the State's removal of this matter acted as a waiver of Eleventh Amendment immunity from suit.  In the further alternative, Plaintiff sought a severance and remand of his state law claims to state court. R. Doc. 5.  A telephone conference was conducted with the parties to discuss this issue. R. Doc. 11.  DPSC then expressly waived its Eleventh Amendment immunity from the matter proceeding in this Court and Plaintiff withdrew the Motion to Remand. R. Docs. 6, 17.

[10] LSP is not an entity subject to suit (*see* dismissal of claims against LSP, *below*).  For the history and proof of service on all named Defendants except Woolfolk, *see* R. Docs. 1-2, 1-3, 18, 21, 23, 23-1, p. 2, and 28-30.  Proof of service on Woolfolk is not in the record but he has appeared through counsel and does not dispute that he was served.  R. Doc. 4, p. 1, n. 1.

ideations. Smith and Woolfolk then escorted Plaintiff to another cell housing another inmate on suicide watch. Again, both objected to the double-bunking.[11]

At about this same time, Holden was operating the "pinbox" that controlled the cell door locking mechanisms. Holden unlocked the door of cell #12, and the unrestrained prisoner housed in that cell began to exit.  Smith and Woolfolk pushed that inmate back into cell #12 without incident and Holden closed and locked the cell door. During this event, Plaintiff remained fully restrained by shackles and hand cuffs and was compliant with orders to remain where he was standing, all while wearing a white paper suicide gown.  However, Holden ran down the tierway, yelling and ordering Plaintiff to get on the ground.[12]  Plaintiff attempted to get on the ground but had difficulty because of the restraints and gown. Holden then tackled Plaintiff with "extreme force."  Once Plaintiff was pinned to the ground, Holden "repeatedly bash[ed]" Plaintiff's head into the floor, and then dragged Plaintiff by his restraint belt into nearby cell #9, which resulted in Plaintiff being double bunked with another inmate on suicide watch.[13]  Holden then ordered Plaintiff to the cell bars and, despite Plaintiff's restraints, sprayed Plaintiff's face and body with several bursts of chemical agent (altogether, the "Incident").[14]

Plaintiff contends that Smith and Woolfolk observed the Incident but failed to intervene, and that Holden, Smith and Woolfolk failed to activate their body cameras and/or security beepers. Plaintiff contends that footage of the Incident exists, or did exist, until these Defendants destroyed or altered it.[15] Plaintiff alleges that Defendants initially refused and/or failed to secure medical treatment for Plaintiff's injuries. However, Plaintiff was eventually taken for treatment after the next officer shift, which treatment was inadequate.  Despite subsequent requests, Plaintiff was allegedly prevented

---

[11] R. Doc. 1-1, ¶¶ 7-9, 11.
[12] R. Doc. 1-1, ¶¶ 12-17.
[13] R. Doc. 1-1, ¶¶18-19, 21-22.
[14] R. Doc. 1-1, ¶ 23.
[15] R. Doc. 1-1, ¶¶ 20, 24, 29.

from seeing a doctor for several days.[16] Plaintiff alleges that Defendants also hindered Plaintiff's attempt to contact his family and attorneys.[17] Plaintiff claims that all procedural and administrative remedies were exhausted[18] and that the suit is timely.[19]

While not entirely clear, Plaintiff has asserted several claims against Defendants in this proceeding, including Eighth and Fourteenth Amendment claims under 42 U.S.C. §1983 for use of excessive force, failure to intervene and deliberate medical indifference; §1983 conspiracy claims; related claims under the Louisiana constitution; and tort claims under La. Civ. Code art. 2315 sounding in negligence, *e.g.,* failure to train, failure to hire, etc.[20] Plaintiff seeks monetary relief, including punitive damages and attorney fees.[21]

DPSC's Motion takes issue with the viability and specificity of several of the claims for damages, as many lack adequate supporting facts. Specifically, DPSC's Motion seeks dismissal, with prejudice, of: (1) Plaintiff's claims against LSP; (2) Plaintiff's § 1983 claims against DPSC and Vannoy; and (3) Plaintiff's state law claims against Vannoy, in his official capacity.[22] DPSC's Motion seeks a more definite statement of: (1) Plaintiff's claim under "42 U.S.C. §§ 1981, et seq.";

---

[16] R. Doc. 1-1, ¶¶ 25-27.

[17] R. Doc. 1-1, ¶ 30.

[18] None of the Administrative Remedy Procedures ("ARP") documentation is in the record, but Plaintiff claims to have timely filed his first grievance on February 3, 2020, which was denied on February 21, 2020. R. Doc. 1-1, ¶¶ 31-32. La. Admin Code. tit. 22, Pt I, § 325, (G)(1) (prisoner ARP grievance must be filed within 90 days of incident giving rise to the grievance). It is unclear when Plaintiff received notice of his step 1 denial, so it is unclear if Plaintiff's step 2 appeal was timely. (La. Admin Code. tit. 22, Pt I, § 325(J)(1)(b) (prisoner must appeal decision on first step grievance within five days of receipt of decision). However, Plaintiff claims to have provided notice of his intent to proceed to step 2 of the ARP on March 4, 2020, and his request was denied at the second step on April 20, 2020. R. Doc. 1-1 ¶¶ 33-34. In any case, Defendants have not asserted that Plaintiff's claims are either untimely or unexhausted.

[19] Plaintiff filed suit on January 25, 2021. R. Doc. 1-1. The prescriptive period for § 1983 claims and Louisiana tort claims is one year. *See Crane v. Childers,* 655 F. App'x 203, 204 (5th Cir. 2016) (holding that a prisoner's state law claims for battery, negligence, intentional infliction of emotional distress, etc. and § 1983 claim were subject to the one-year prescriptive period for delictual actions under Louisiana law). Suit was filed about one year and five days after the Incident; however, prescription was tolled during the pendency of the administrative proceedings, a period of approximately two and a half months, *i.e.,* February 3, 2020 through April 20, 2020. *See Abbott v. Babin,* No. 15-505, 2016 WL 3951625, at *2 (M.D. La. July 21, 2016), citing *Wright v. Hollingsworth,* 260 F.3d 357, 359 (5th Cir. 2001) (noting that "…§ 1983 actions are tolled during the pendency of a prisoner's administrative proceedings.").

[20] R. Doc. 1-1, ¶¶ 36-45.

[21] R. Doc. 1-1, ¶ 47. Plaintiff seeks boilerplate categories of damages, including medical expenses, pain and suffering, mental distress, anxiety and anguish, disability, etc. R. Doc. 1-1, ¶ 47. Plaintiff also asserts claims for liability insurance coverage against the liability insurer of DPSC, the as-yet unidentified ABC Insurance Company. R. Doc. 1-1, ¶ 46.

[22] R. Doc. 4, p. 1, ¶¶ 1-3, R. Doc. 4-1, p. 13, and R. Doc. 12, pp. 2-3. (*See also* Doc. 20, p. 1, ¶¶ 1-2).

(2) Plaintiff's "conspiracy" claims; and (3) the causes of action purportedly raised in paragraphs 36-38 of the Complaint.[23]  DPSC's Motion also seeks dismissal of Plaintiff's double bunking claim, as well as a "*Schultea* reply" addressing Woolfolk's assertion of qualified immunity in response to Plaintiff's claim that Woolfolk failed to intervene.[24]

## II.  LAW AND ANALYSIS

### A.  Legal Standards

#### 1.  Fed. R. Civ. P. 12(b)(6) Dismissal for Failure to State a Claim

In *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*,[25] the United States Supreme Court addressed the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[26]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[27] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28]  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[29]  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[30]

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[31]  While factual

---

[23] R. Doc. 4, p. 2, ¶¶ 4-6, R. Doc. 4-1, p. 13, and R. Doc. 12, p. 3.  (*See also* R. Doc. 20, p. 1, ¶¶ 3-4).
[24] R. Doc. 4, p. 2, ¶¶ 7-8 and *see Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).
[25] *Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. 662 (2009).
[26] *Twombly,* 550 U.S. at 555.
[27] *Iqbal,* 556 U.S. at 678, quoting *Twombly,* 550 U.S. at 570.
[28] *Iqbal,* 556 U.S. at 678.
[29] *Id.* at 679.
[30] *Id.* at 678 (internal quotation marks omitted).
[31] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

assertions are presumed to be true, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a Fed. R. Civ. P.12(b)(6) motion.[32]

### 2. 28 U.S.C. §1915A Dismissal for Failure to State a Claim

Pursuant to 28 U.S.C. § 1915A, this Court is authorized to dismiss an action or claim by a prisoner who is asserting a claim against a governmental entity or an officer or employee of a governmental entity if the court is satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.[33]  The statute is intended to afford the Court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.

To determine whether the complaint fails to state a claim under § 1915A, courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[34] Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.[35]

### B. Plaintiff Does Not Have a Cause of Action Against LSP and Has Failed to State a Claim Under § 1981 and § 1983 and State Law Against the Supervisory Defendants

### 1. The LSP Is Not a Juridical Entity Capable of Being Sued

Defendants seeks dismissal of LSP on the grounds that, as a prison, it is not a juridical entity capable of being sued.[36]  Plaintiff agrees that LSP is not a juridical entity capable of being sued and

---

[32] *Iqbal*, 556 U.S. at 678.
[33] 28 U.S.C. § 1915A authorizes dismissal on the referenced grounds regardless of the pauper status of the plaintiff. *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998).
[34] *Kelm v. 22nd Jud. Dist. Ct. of St. Tammany Par.,* No. 19-728, 2021 WL 3674086, at *2 (M.D. La. June 28, 2021)*, report and recommendation adopted,* No. 19-728, 2021 WL 3673101 (M.D. La. Aug. 18, 2021), citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. § 1915(e)(2)(B)(ii) and §1915A and Fed. R. Civ. P. 12(b)(6)).
[35] *Kelm,* 2021 WL 3674086, at *2, citing *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).
[36] R. Doc. 4-1, p. 6, citing *Ricks v. Louisiana State Penitentiary*, No. 19-701, 2020 WL 5047412 (M.D. La. Aug. 3, 2020) and *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

thus does not oppose dismissal of his claims against LSP.[37]  The parties correctly assert that LSP is not a juridical entity capable of being sued under Louisiana law.[38]  Therefore, DPSC's Motion will be granted, dismissing all of Plaintiff's claims against LSP in their entirety and with prejudice.

### 2. Plaintiff Does Not Dispute That He Has No Cause of Action Against the Supervisory Defendants Under 42 U.S.C. § 1983 for Monetary Relief

DPSC and Vannoy seek dismissal of Plaintiff's § 1983 claims against them, contending that they are not "persons" capable of being sued for monetary damages under § 1983 because DPSC is an executive branch agency of the State and because Vannoy is a state official sued in his official capacity.[39] Plaintiff has not alleged any claims against Vannoy in his individual capacity, and has not alleged that Vannoy had any personal involvement in the Incident.  Plaintiff states that he "is aware that claims falling under 42 U.S.C. § 1983 are not viable against the State of Louisiana, Angola Prison, or other Defendants who were, at the pertinent times, operating solely in their official capacities, as such juridical entities are not "persons" within the meaning of § 1983."[40] Thus, Plaintiff does not

---

[37] R. Doc. 8, p. 9.  Counsel for Plaintiff has filed similar complaints in other matters removed to this Court asserting claims that have been dismissed on many of the same grounds asserted by Defendants here and often with no objection from the plaintiffs.  *See, e.g., Dunn v. Louisiana through Dep't of Pub. Safety & Corr.,* No. 20-425, 2021 WL 3204741 (M.D. La. July 28, 2021) (dismissing correctional facility for lack of juridical capacity; dismissing § 1983 official capacity claims for monetary relief, both with no objection from the plaintiff).  Repeatedly presenting the same non-meritorious claims that have been previously dismissed for lack of legal support, results in a waste of this Court's judicial resources, particularly when the plaintiffs have no opposition to their dismissal because they agree the claims are legally unsupported. Plaintiff's counsel is cautioned to heed this Court's rulings dismissing claims for lack of legal support and to refrain from asserting those same claims in future filings in similar cases, as this conduct is potentially violative of Fed. R. Civ. P. 11.  Future assertions of the same legally unsupported claims that have been repeatedly dismissed may result in the imposition of sanctions.

[38] *See Cartwright v. Goodwin,* No. 17-1669, 2018 WL 2124915, at *3 (W.D. La. Mar. 28, 2018), *report and recommendation adopted,* No. 17-1669, 2018 WL 2123619 (W.D. La. May 8, 2018) ("Federal Rule of Civil Procedure 17(b) provides the 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.' Thus, Louisiana law governs whether these facilities have the capacity to sue or be sued and under Louisiana law. To possess that capacity, one must qualify as a 'juridical person.'… In Louisiana, neither correctional centers nor sheriff's departments are legal entities capable of suing or being sued as the State of Louisiana has not granted them juridical status. *Ruggiero v. Litchfield,* 700 F. Supp. 863, 865 (M.D. La. 1988) (other citations omitted)."  *See also Ricks,* 2020 WL 5047412 at *2,  and *Walter v. Perkins,* No. 18-683, 2020 WL 4461056, at *3 (M.D. La. July 27, 2020), *report and recommendation adopted,* No. 18-683, 2020 WL 4456504 (M.D. La. Aug. 3, 2020), *aff'd,* No. 20-30547, 2021 WL 5458110 (5th Cir. 2021) ("[A] prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term.") (string citation omitted).

[39] R. Doc. 4-1, pp. 5-6.  *See also* R. Doc. 20-1, p. 5.

[40] R. Doc. 8, pp. 6-7, citing *Will,* 491 U.S. at 64.

offer any opposition to these claims being dismissed against DPSC and "the Official Capacity Corrections Officers."[41]

The parties are correct that Plaintiff cannot state § 1983 claims against DPSC and Vannoy in his official capacity for monetary relief, such that DPSC's Motion will be granted, dismissing those claims with prejudice.[42] To the extent that Plaintiff is suing Thompson in his official capacity, which is not explicit in the Complaint but appears to be the case as Plaintiff has grouped Thompson with DPSC and Vannoy, his § 1983 official capacity claim against Thompson will also be dismissed under §1915A with prejudice.[43]

### 3. Plaintiff Does Not Challenge Dismissal of His § 1981 Claims and § 1983 Conspiracy Claims Against the Supervisory Defendants

Defendants seek a more definite statement of Plaintiff's vague claim raised pursuant to "42 U.S.C. § 1981, *et seq.*"[44] Defendants want Plaintiff to specify what cause of action he is asserting against which Defendants, as that vague phrase could apply to a number of other statutes following §

---

[41] R. Doc. 8, pp. 6, 9.

[42] *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."); *Ricks*, 2020 WL 5047412, at *2 ("DOC is an independent executive branch agency of the state government, and thus, is not subject to liability under § 1983."). *See also Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) ("The Supreme Court has 'held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted.' *Med. RX/Sys., P.L.L.C. v. Texas Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016), citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002). This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Id.* (citing *Howlett v. Rose*, 496 U.S. 356, 365, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989))"), and *see Parker*, 2020 WL 4353564 at *8 ("Plaintiff has no viable § 1983 claim for *monetary damages* against DPSC and LeBlanc in his official capacity because they are not 'persons' under § 1983.").

[43] R. Doc. 1-1, ¶ 1(D) and *see* R. Doc. 8, p. 11: "Critically, there are two separate groups of culpable actors involved in the January 20, 2020 attack: (1) the attacking and observing employees/guards, and (2) the State of Louisiana and Official actors responsible for the prevention of such an attack and responsible for providing adequate medical care in a timely manner following such attack. It is the first group of actors for which the § 1983 claims are brought…." and identifying the first group of actors as Holden, Smith, and Woolfolk.

[44] 42 U.S.C. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

1981, *i.e.*, § 1985, *et al.*[45] Likewise, Defendants argue that Plaintiff's § 1983 conspiracy claim is not supported by any facts, which fails to give sufficient notice of the claim.[46]

In opposition to the Vannoy Motion, Plaintiff clarifies that he does not oppose the dismissal of any purported claim against Vannoy under § 1981 *et seq.*, which will be dismissed.[47]  Plaintiff's opposition to DPSC's Motion does not address the dismissal of his § 1981 claim against DPSC, and therefore, Plaintiff has waived any argument against dismissal of this claim.[48] Furthermore, Plaintiff has not alleged any facts in support of a § 1981 claim against any of the Supervisory Defendants, which protects the rights to make and enforce contracts, to sue, be parties, give evidence, etc.  Further, Plaintiff clarified that he is not asserting a §1983 conspiracy claim against "the State of Louisiana and Official actors responsible for the prevention of [the] attack….," *i.e.*, DPSC, Vannoy, and Thompson.[49]

Therefore, DPSC's Motion shall be granted, dismissing Plaintiff's § 1981 *et. seq.* and § 1983 conspiracy claims against Vannoy and DPSC with prejudice.  For the same reasons, Plaintiff's § 1981 *et seq.* and § 1983 claims against Thompson will be dismissed under § 1915A with prejudice.

---

[45] R. Doc. 4-1, p. 7, R. Doc. 20-1, p. 6, and R. Doc. 12, p. 3.

[46] R. Doc. 4-1, pp. 7-8 (and R. Doc. 20-1, p. 6-7).

[47] Plaintiff claims that "Vannoy, as an official capacity defendant, is not a "person" subject to suit pursuant to § 1981 *et seq.*"  R. Doc. 22, p. 9, citing *Will*, 491 U.S. at 64.  Furthermore, Plaintiff has not alleged any facts in support of a § 1981 claim, which protects the rights to make and enforce contracts, to sue, be parties, give evidence, etc. *See* the footnote, *above*.

[48] *See Parker v. Louisiana Dep't of Pub. Safety & Corr.,* No. 18-1030, 2021 WL 2697528, at *7 (M.D. La. June 30, 2021) ("The Court finds that "Plaintiff has waived any opposition to dismissal of these claims by failing to substantively oppose LeBlanc's motion. *See United States ex rel. Byrd v. Acadia Healthcare Co., Inc.*, No. 18-312, 2021 WL 1081121, at *29 (M.D. La. Mar. 18, 2021)….") *and see Acadia Healthcare Co., Inc.,* 2021 WL 1081121, at *29 ("By analogy, failure to brief an argument in the district court waives that argument in that court." *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748, n. 10)… *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).").

[49] R. Doc. 8, p. 11, defining two "separate groups of culpable actors," with the first group consisting of "the attacking and observing employees/guards" made up of Holden, Smith, and Woolfolk, against whom Plaintiff asserts his conspiracy claims.  *See also,* R. Doc. 22, p. 10.

### 4.    Plaintiff Has Failed to State a State Law Claim Against the Supervisory Defendants

Vannoy argues that, since Plaintiff's state law claims are asserted against Vannoy in his official capacity, they are really claims against DPSC.[50]  Plaintiff has already asserted state law claims against DPSC, and DPSC disputes liability, but admits that it is the proper party against whom those claims should be asserted. Vannoy thus argues that Plaintiff's state law claims against him are duplicative and should be dismissed.[51]

Plaintiff argues that his state law claims against Vannoy are not duplicative. Rather, Plaintiff contends that "Warden Vannoy is culpable for various actions/inactions taken independent of Captain Holden's sordid conduct, including his failures to properly train and supervise and instill reasonably adequate policies and/or practices for the protection of inmates in Plaintiff's position."[52]  Plaintiff contends that Vannoy, in his capacity as Warden, failed to provide adequate supervision, enforce adequate policies, and obtain timely medical treatment for Plaintiff, which "would have prevented and/or mitigated the damage in this matter."[53]  Plaintiff argues that his claims against Vannoy are not subject to dismissal just because any ultimately awarded judgment will be owed by DPSC.[54]

In reply, Vannoy clarifies that he has not sought dismissal of the state law claims on the ground that the State will ultimately be liable for a potential judgment. Rather, Vannoy seeks dismissal because the claims against Vannoy in his official capacity are really claims against DPSC.[55]  Vannoy also points out that Plaintiff's arguments are contradictory, because on the one hand, Plaintiff has only sued Vannoy in his official capacity, and Plaintiff has acknowledged that DPSC is the employer

---

[50] R. Doc. 4-1, p. 6, citing *LeBlanc v. Thomas*, 2008-2869 (La. 10/20/09); 23 So. 3d 241, 246 and *Robinson v. Hunt County, Texas*, 921 F.3d 440, 446 (5th Cir. 2019). *See also* R. Doc. 20-1, pp. 5-6.
[51] R. Doc. 4-1, p. 6, R. Doc. 12, pp. 1-3 (and R. Doc. 20-1, pp. 5-6).
[52] R. Doc. 8, pp. 9-10 (and R. Doc. 22, pp. 6-9).
[53] R. Doc. 8, pp. 8-9 (and R. Doc. 22, pp. 7-8).
[54] R. Doc. 8, p. 10.
[55] R. Doc. 12, pp. 1-2.

of all of the individual defendants, including Vannoy.[56]  However, Plaintiff then alleges that *Vannoy* is liable for the actions of the other Defendants pursuant to the doctrine of *respondeat superior*, which contradicts Plaintiff's acknowledgement that DPSC is actually the employer of the individual Defendants.   Vannoy avers that Plaintiff's arguments reveal that Plaintiff misunderstands the phrase and import of suing Vannoy in his "official capacity;" however, that is the capacity that Plaintiff has raised state law claims against Vannoy, and therefore they must be dismissed as duplicative of the state law claims against DPSC.[57]  Notably, Vannoy suggests that Plaintiff be given leave to amend in the event Plaintiff intended to assert claims against Vannoy in another capacity.[58]

Vannoy is correct that all of Plaintiff's claims against Vannoy are in his official capacity, only. *See* Complaint: "WARDEN DARRELL VANNOY, IN HIS OFFICIAL CAPACITY AS WARDEN OF ANGOLA PRISON, an individual of full age of majority, having as his employer, Louisiana Department of Public Safety & Corrections…."[59]  Plaintiff's briefs also repeatedly refer to Vannoy as an "Official Capacity" Defendant.[60]  Vannoy is also correct that Plaintiff appears to allege the same state law claims against Vannoy and DPSC, and the Complaint reflects that they are also the same claims asserted against Thompson.[61]  However, Plaintiff's Complaint fails to allege any facts in support of state law claims against these Defendants.  At most, Plaintiff sets forth a generalized

---

[56] R. Doc. 12, pp. 2-3 and *see* Plaintiff's Complaint at R. Doc. 1-1, ¶ 39, which alleges: "Defendant STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS is responsible for the acts and omissions of its employees and are liable for the activities of its agents" (emphasis in original) as well as ¶¶ 1(C)(-(G) and 5-6, which plead that DPSC is the employer of the individual Defendants including Vannoy, and that Vannoy and the other Defendants acted in the course and scope of their employment.

[57] R. Doc. 12, pp. 2-3.

[58] *See* Defendants' Reply at R. Doc. 12, p. 3, noting that since Plaintiff has asserted Vannoy is a proper Defendant, then "[t]his Honorable Court probably has to give the Plaintiff leave to amend to support that statement with proper pleading," citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 369-70 (5th Cir. 2010) (in a § 1983 case, considering the relation back of an amendment wherein the district court permitted the plaintiff leave to amend her complaint to name the acting corrections officer in his individual capacity, as opposed to his official capacity, which the Plaintiff originally and mistakenly pleaded). This Ruling takes no position on the ultimate validity or timeliness of any amendments.

[59] R. Doc. 1-1, ¶ 1(C).

[60] R. Doc. 8, pp. 6-7, 9 and R. Doc. 22, p. 9.

[61] R. Doc. 1-1, ¶ 37 and R. Doc. 4-1, p. 6.

list of negligent actions and inactions against the Supervisory Defendants *in globo* in paragraph 37

of his Complaint:

> A proximate cause of the incident, civil rights violations, attack, and
> resulting physical injuries and damages to JARIUS WINGARD was
> the negligence of [the Supervisory] Defendants [] which negligence is
> particularized in the following respects:
> 1.  Failure to properly hire, supervise, train and/or retain employees;
> 2.  Failure to properly perform job duties;
> 3.  Creating an unreasonably unsafe condition;
> 4.  Failure to warn of unreasonably unsafe conditions;
> 5.  Failure to adequately supervise;
> 6.  Failure to institute and/or enforce reasonably adequate policies;
> 7.  Failure to develop and/or maintain and enforce a custom, practice,
>     or policy for the reasonable protection of inmates;
> 8.  Failure to reasonably care for JARIUS WINGARD;
> 9.  Failure to provide reasonably adequate medical care and/or safe
>     living conditions;
> 10. Negligent hiring, training, and/or retention of personnel;
> 11. Ignoring patterns of abuse;
> 12. Other acts of negligence and/or fault which may be shown through
>     discovery at trial;
> 13. Generally, the failure to act with the required degree of care
>     commensurate with the existing situation.[62]

The Court in *Dunn* considered a paragraph identical to paragraph 37, *above*, and found that

"[a] list of alleged failures, without any factual support, does not suffice to move these claims into

the realm of plausibility, beyond mere possibility. Although at this stage the Court is bound to

construe the pleaded facts in the light most favorable to Plaintiff, Plaintiff has not, at least with respect

to his negligence claim against DPSC and Hooper, provided any facts for the Court to construe.

Therefore, his state law negligence claim against Hooper and DPSC shall be dismissed without

prejudice."[63]  This analysis also governs Plaintiff's claims in this case.

Likewise, Plaintiff's vague allegation that he asserts claims under "…the Louisiana

Constitution, and other laws of the State of Louisiana, including Louisiana Civil Code articles 2315

---

[62] R. Doc. 1-1, ¶ 37.
[63] 2021 WL 3204741 at *4.

12

et. seq., *in pari material* (sic) with Titles 13 and 14 of the Louisiana Revised Statutes" provides no facts in support of a claim.[64]  Arguments in brief are not enough to properly plead a cause of action.[65] Therefore, DPSC's Motion will be granted, dismissing the state law claims against Vannoy without prejudice.  Plaintiff's state law claims against DPSC and Thompson will also be dismissed without prejudice pursuant to § 1915A.[66]  Plaintiff will be given leave to amend his Complaint to attempt to assert colorable state law claims against DPSC, Vannoy, and Thompson, if possible.

### C.  Plaintiff Has Failed to State a "§ 1981 *et. seq.*" Claim Against the Acting Defendants

Defendants seek a more definite statement of Plaintiff's claim raised pursuant to "42 U.S.C. § 1981, *et seq.*" Defendants request that Plaintiff identify the statutes under which he is asserting a claim, and to identify which Defendants engaged in wrongful conduct under the statutes identified.[67] Plaintiff's opposition memorandum to DPSC's Motion does not address the dismissal of his § 1981 claim against Woolfolk (or the other Acting Defendants), and therefore, Plaintiff has waived any argument against dismissal of this claim.[68]

Furthermore, Plaintiff's barebone allegation that: "At all relevant times herein the conduct of all Defendants were subject to 42 U.S.C. §§ 1981 *et. seq.*" fails to identify the specific Defendants against whom he intends to assert this claim (presumably, one or more of the Acting Defendants), fails to identify the specific statute under which he is stating this claim, and fails to provide any factual details in support of a claim. Therefore, this claim will be dismissed pursuant to §1915A, without prejudice to the filing an amended complaint that provides these details, if possible.

---

[64] R. Doc. 1-1, ¶ 45 and *see id.* at ¶ 42, generally alleging, with no specifics, that "Defendants" acted under color of law and deprived Plaintiff of rights secured by Louisiana law.
[65] "Arguments of counsel in a brief are not a substitute for properly pleaded allegations, and 'it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.'"  *Mocsary v. Ard,* No. 17-1713, 2018 WL 4608485, at *11 (M.D. La. Sept. 25, 2018) (citations omitted).
[66] Defendants have not sought dismissal of the state law claims against DPSC: however, Plaintiff has failed to sufficiently plead a state law claim against DPSC under § 1915A.
[67] R. Doc. 4-1 p. 7, R. Doc. 20-1, p. 6, and R. Doc. 12, p. 3.
[68] *See Parker,* 2021 WL 2697528, at *7, *and see Acadia Healthcare Co., Inc.,* 2021 WL 1081121, at *29 ("By analogy, failure to brief an argument in the district court waives that argument in that court.") (citations omitted).

### D. Plaintiff Has Failed to State a § 1983 Conspiracy Claim Against the Acting Defendants

Defendants argue that Plaintiff's § 1983 conspiracy claim is not supported by any facts showing a "conspiracy."[69] Plaintiff contends that he has pleaded facts to show that all three Acting Defendants "were present, involved, and deliberately indifferent," as Holden beat and assaulted Plaintiff while Smith and Woolfolk stood by and failed to intervene, and then some or all of them ignored Plaintiff's need for medical care.  Plaintiff contends that these actions "related to the orchestration and facilitation of the physical attack on Plaintiff, as well as refusal to timely obtain reasonable medical care."[70]

"Federal courts view conspiracy claims under Section 1983 differently than similar claims under section 1985." To state a Section 1983 conspiracy claim, a plaintiff must allege: (1) an agreement between a defendant and others, involving at least one person acting under color of state law to commit an illegal act, and (2) an actual deprivation of the plaintiff's constitutional rights in furtherance of that agreement. A plaintiff who asserts a conspiracy claim under a civil rights statute must plead the operative facts upon which their claim is based.[71]

The reasoning in *Dunn*, which dismissed a similar conspiracy claim, is adopted here,[72] *to-wit*: Plaintiff's §1983 conspiracy claim has a fatal flaw: the absence of any specific allegations of an agreement among the Acting Defendants.  The Complaint states in conclusory fashion that "As a result of Defendants' conspiracy to commit illegal acts and the actions taken with deliberate indifference to the safety and well-being of [Plaintiff], they are all liable to Plaintiff per 42 U.S.C. §

---

[69] R. Doc. 4-1, pp. 7-8 (and R. Doc. 20-1, pp. 6-7), citing *Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006).

[70] R. Doc. 8, pp. 11-12.  Plaintiff asserts that *Longoria* is not meaningful because it is a summary judgment case.  *Id.* The Court does not rely on *Longoria.*

[71] *Dunn,* 2021 WL 3204741, at *2, citing *Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995); *Whisenant v. City of Haltom City*, 106 F. App'x. 915, 917, 2004 WL 1778247 at *1 (5th Cir. 2004) and *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991).

[72] 2021 WL 3204741 *and see* the Dunn Complaint, No. 20-425 (M.D. La. July 3, 2020), R. Doc. 1-4, pp. 1-12, specifically p. 10, ¶ 45, asserting: "As a result of Defendants' conspiracy to commit illegal acts against TRAVIS SHAWN DUNN, they are all liable to Plaintiff per 42 U.S.C. § 1983, ads [sic] well as 42 U.S.C. § 1988, for attorney fees."

1983 ads [sic] well as 42 U.S.C. § 1988 for attorney fees."[73]  As in *Dunn*, Plaintiff also alleges, vaguely, that "[t]he Defendants acted in combination and in concert to commit unlawful and unconstitutional acts against Plaintiff."[74] However, Plaintiff's factual allegations regarding the events of January 20, 2020 do not establish any agreement among Defendants. Plaintiff alleges, without tying the events together, that after Smith and Woolfolk tried to bunk Plaintiff in two cells, Plaintiff had a physical altercation with Holden, which Smith and Woolfolk watched, and then Holden dragged Plaintiff into a cell and sprayed Plaintiff while he was behind bars.[75]  However, no facts have been pleaded to show that there was an agreement to violate Plaintiff's rights. Plaintiff's Complaint sets forth only the possibility of a conspiracy, without specific factual allegations of an agreement to render such a claim plausible.

This finding comports with the analysis of other courts who have considered the sufficiency of Section 1983 conspiracy pleading.  In *Montgomery v. Walton*, the U.S. Court of Appeals for the Fifth Circuit held that the plaintiff failed to state a §1983 conspiracy claim where his allegations took the following form:

> At points in this complaint, Montgomery alleges that the defendants 'act[ed] in concert,' 'agree[d]' to plant contraband, and 'elicited aid' from each other for the purpose of violating his civil rights. Most importantly, although he alleges there was an agreement—an agreement to kill or imprison him—these allegations are largely conclusory without any identification of time, date, or circumstance.[76]

Arguably, Montgomery's allegations came closer to alleging conspiracy than the allegations in Plaintiff's Complaint, since Montgomery at least stated that there was an agreement among the parties. Plaintiff has also not pleaded any "alleged common motive" among the Defendants, another

---

[73] R. Doc. 1-1, ¶ 43.  Plaintiff does not specifically plead a conspiracy claim under § 1985.
[74] R. Doc. 1-1, ¶ 40 and *see Dunn*, No. 20-425 (M.D. La. July 3, 2020), R. Doc. 1-4, p. 9, ¶ 42: "The Defendants acted in combination and in concert to commit unlawful and unconstitutional acts against Plaintiff."
[75] R. Doc. 1-1, ¶¶ 7-23.
[76] *Dunn*, 2021 WL 3204741 at *3, citing *Montgomery*, 759 F. App'x 312, 314 (5th Cir. 2019).

factor that the Fifth Circuit identified as contributing to the plausibility of a Section 1983 conspiracy claim.[77]

Similarly, another section of this Court held, in another § 1983 conspiracy case, that the § 1983 claims that are "at best, speculative and conclusory" cannot survive a motion to dismiss. In *Mitchell v. Thomas*, this Court found that the plaintiff failed to allege that "the Defendants reached an agreement or understanding to cause [him] harm" when he alleged that a corrections officer signaled for another officer to open the plaintiff's cell, at which point the officers allowed an unshackled inmate to attack the plaintiff. Based on those allegations, the plaintiff argued that "it was obvious that [the officers] had conspired…." The Court disagreed, finding the allegations conclusory and speculative.[78] The same can be said here.   Plaintiff cannot merely allege that "[t]he Defendants acted in combination and in concert" – he must plead facts in support of that conclusion. He does not. Accordingly, the §1983 conspiracy claim against Holden, Smith, and Woolfolk will be dismissed without prejudice pursuant to §1915A.

### E.  Paragraphs 36-38 of the Complaint Fail to State a Claim

Defendants allege that paragraphs 36-38 of Plaintiff's Complaint are a "shotgun" approach at pleading, and "merge and confuse the applicable legal standards to the point that the basis of each claim cannot be identified."[79]   For example, Defendants contend that paragraph 36 only generally alleges that the Acting Defendants violated nonspecific operating procedures, Louisiana laws and the state and federal constitutions. Defendants also contend that Plaintiff's numbered list of generalized acts of negligence at paragraphs 37-38, *e.g*., failure to supervise, warn, intervene and care, etc., fail to state which claims are brought against which Defendants.[80]   Defendants also argue that these

---

[77] *Dunn,* 2021 WL 3204741 at *3, citing *Jackson v. City of Hearne, Tex.,* 959 F.3d 194, 206 (5th Cir. 2020) and *Montgomery*, 759 F. App'x at 315.
[78] *Dunn,* 2021 WL 3204741 at *3, citing *Mitchell v. Thomas,* No. 17-90, 2018 WL 4572667, at *5 (M.D. La. Sept. 24, 2018).
[79] R. Doc. 4-1, p. 8, and R. Doc. 12, p. 4.
[80] R. Doc. 4-1, pp. 8-9.

alleged acts of negligence do not support Plaintiff's civil rights claims because "it is well-established that negligence cannot form the basis of a civil rights claim."[81]

Plaintiff argues that he has properly pled multiple factual allegations in individually numbered paragraphs and described factual allegations, actions/inactions, failures and/or negligence of Defendants in paragraphs 37-38. By these allegations, "Defendants need not wonder what incident is at issue, whose conduct is at issue, or what causes of action are being asserted," and Defendants' criticism of Plaintiff's presentation of allegations is not grounds for dismissal.[82]

Paragraph 36 of the Complaint provides:

> The actions and/or omissions of CAPTAIN HOLDEN, SERGEANT SMITH, and/or CADET WOOLFOLK on January 20, 2020 violated internal operating procedure, written policies and procedures, positive Louisiana statutory law, the Louisiana Constitution, the United States Constitution, and additional [sic] displayed a lack of care amounting to deliberate indifference of JARIUS WINGARD'S status and condition in further violation of the United States Constitutions, the Louisiana State Constitution, and various other state and federal law, statutory and jurisprudential.[83]

This allegation only generally alleges violations of nonspecific federal and state laws against the Acting Defendants, *in globo*. As such, it fails to state what cause of action Plaintiff is asserting against which Defendant and will be dismissed for lack of supporting factual details, without prejudice.

Paragraph 38 alleges a list of negligent acts committed by the Acting Defendants that is similar to the list of acts in paragraph 37 discussed *above.* As previously explained, the *Dunn* court considered an identical paragraph, and found that this "list of alleged failures, without any factual support, does not suffice to move these claims into the realm of plausibility, beyond mere possibility," and

---

[81] R. Doc. 12, p. 4, citing *Copeland v. Edwards*, No. 17-2122, 2017 WL 2199025, at *3 (E.D. La. Apr. 28, 2017), *report and recommendation adopted,* No. 17-2122, 2017 WL 2189963 (E.D. La. May 18, 2017) ("Claims arising from allegedly negligent acts do not give rise to relief under Section 1983") (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); and *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (other citations omitted)).
[82] R. Doc. 8, pp. 12-13.
[83] R. Doc. 1-1, ¶ 36.

dismissed the state law negligence claims against the Warden and DPSC.[84] *Dunn's* reasoning applies to Plaintiff's similarly worded list of negligent acts in paragraph 38, and thus Plaintiff's state law negligence claims against the Acting Defendants will be dismissed without prejudice.

### F. Plaintiff's Complaints of Double Bunking Fail to State a Legally Cognizable Claim

Defendants assert that Woolfolk is entitled to qualified immunity shielding him from liability on Plaintiff's claim that his constitutional rights were violated when he was double bunked with another inmate while on suicide watch because there is no precedent holding that a suicidal inmate has a constitutional right to be placed in a single cell.[85]  Defendants argue that Plaintiff has cited no relevant authority, *i.e.*, from the U.S. Supreme Court, the Fifth Circuit, or a "consensus of cases of persuasive authority," for this proposition and therefore the claim should be dismissed.[86]  Plaintiff responds that he is not asserting a *per se* constitutional violation based on double bunking, as he recognizes that such a claim is contrary to this Court's prior jurisprudence.[87]  Plaintiff clarifies that his Complaint alleges that "the practice of *coercing suicidal inmates* to double bunk has previously been found to be unconstitutional,"[88] relying on an Eastern District of Wisconsin decision.  However, Plaintiff then contends that the forcing of suicidal inmates to double bunk "is a secondary concern in this case as the true crux of this matter revolves around Captain Holden's callous and unjustified physical assault of Jarius Wingard. For purposes of the present Motion, Defendants only seek to contest Plaintiff's allegation that Cadet Woolfolk failed to intervene…."[89]

---

[84] 2021 WL 3204741 at *4.

[85] R. Doc. 4-1, pp. 9-12 and *see* R. Doc. 1-1, ¶ 10: "The practice of coercing suicidal inmates to double bunk has previously been determined to be unconstitutional and in violation of the 8th Amendment of the United States Constitution."

[86] R. Doc. 4-1, p. 11, citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

[87] R. Doc. 8, p. 14, citing *Barrow v. Vannoy*, 18-442 (M.D. La. May 1, 2019), 2019 WL 2130237, *2, *report and recommendation adopted,* No. 18-442, 2019 WL 2127314-JWD-RLB (M.D. La. May 15, 2019) (holding that the double bunking claim of the plaintiff (who had repeatedly been placed on standard suicide watch and claimed to have a long history of mental health complaints, *see* No. 18-442 (M.D. La. June 21, 2018), R. Doc. 6-1, pp. 4-5), failed to state a claim) and citing *Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (there is no constitutional principle requiring "one man, one cell," and that the "double celling" of inmates is not a *per se* unconstitutional condition.).

[88] R. Doc. 8, pp. 14-15 (emphasis in original), citing *Delgado v. Cady*, 576 F. Supp. 1446 (E.D. Wis. Dec. 28, 1983).

[89] R. Doc. 8, p. 15.

Considering Plaintiff's quoted statement *above*, it is unclear whether Plaintiff is asserting a claim that the attempts to double bunk him, and his ultimate double bunking, were a violation of his constitutional rights. To the extent that Plaintiff is asserting such a claim, it fails because, as Plaintiff recognizes, this Court has previously held that an inmate has no *per se* constitutional right to a single cell.[90] Plaintiff's sole authority, a thirty-eight-year-old case from a jurisdiction outside of this Circuit, is not binding on this Court. Therefore, because double bunking, without more, is not a violation of a clearly established right, this claim will be dismissed with prejudice.[91]

### G. Remaining Claims Against the Acting Defendants and § 1915A Screening

#### 1. Qualified Immunity

The qualified immunity defense, which operates to protect public officials who are performing discretionary tasks if their actions were objectively reasonable in light of clearly established law, requires a two-step analysis.[92] Taking the facts as alleged in the light most favorable to the plaintiff(s), the Court considers whether a defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred.[93] The two elements may be analyzed in either order.[94] "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[95] The plaintiff is

---

[90] *Barrow,* 2019 WL 2130237 at *2, citing *Bell*, 441 U.S. at 542.

[91] *See also Barrow,* 2019 WL 2130237 at *2 ("Construing the plaintiff's 'double celling' claim in the context of a civil rights action, it has no merit. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Duncan v. Puckett*, 91 F.3d 137, 1996 WL 400039 (5th Cir. 1996) (upholding the dismissal, as frivolous, of an inmate's claim of being placed 'in a single cell with another inmate'); *Thompson v. Stalder*, 2008 WL 874138, *7 (M.D. La. April 1, 2008) (finding that 'the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension'); and *Higgins v. Jefferson Parish Prison*, 1988 WL 24137, *3 (E.D. La. March 7, 1988) (claim of being housed in a cell with another inmate dismissed as frivolous).").

[92] *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012).

[93] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001)—that called for consideration of the two-pronged analysis in a particular order—should not be "regarded as an inflexible requirement").

[94] *Pearson*, 555 U.S. at 236.

[95] *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) citing *McClendon*, 305 F.3d at 323.

required to prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[96]

"To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[97] "The clearly established standard does not mean that officials' conduct is protected by qualified immunity unless the very action in question has previously been held unlawful."[98] Indeed, "[t]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations."[99] "[A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract."[100] "Officials should receive the protection of qualified immunity unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful."[101]

Defendants contend that Woolfolk is entitled to qualified immunity from suit under § 1983 and Louisiana law, shielding him from Plaintiff's failure to intervene claim.[102] Although Defendants have not sought dismissal of the other claims against the Acting Defendants directly associated with the Incident, those claims are subject to screening under § 1915A. All of Plaintiff's claims for excessive force against Holden, as well as his failure to intervene claims against Smith and Woolfolk related to the incident where Plaintiff alleges he was tackled and beaten by Holden, are sufficient to overcome Woolfolk's assertion of the qualified immunity defense and survive §1915A screening. Plaintiff's claims against the Acting Defendants for deliberate medical indifference, and his bystander

---

[96] *Iqbal*, 556 U.S. at 676.

[97] *Cantrell,* 666 F.3d at 919, citing *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

[98] *Cantrell,* 666 F.3d at 919, citing *Wernecke v. Garcia,* 591 F.3d 386, 393 (5th Cir. 2009).

[99] *Cantrell,* 666 F.3d at 919, citing *Brown v. Miller,* 519 F.3d 231, 236-37 (5th Cir. 2008).

[100] *Cantrell,* 666 F.3d at 919, citing *Kinney,* 367 F.3d at 350.

[101] *Cantrell,* 666 F.3d at 919, citing *Wernecke,* 591 F.3d at 393.

[102] R. Doc. 4-1, pp. 9-10, citing *Burge v. Par. of St. Tammany,* 187 F.3d 452, 482 (5th Cir. 1999) (quoting *Moresi v. Department of Wildlife and Fisheries,* 567 So. 2d 1081, 1093 (La. 1990)).

claims against Woolfolk and Smith for the incident where Plaintiff alleges he was dragged and sprayed with chemical agent by Holden, are subject to dismissal with leave to amend, rather than requiring a *Schultea* reply.[103]

### 2. Excessive Force When Holden Tackled and Beat Plaintiff

It is axiomatic that corrections officers are faced with myriad situations where they must exercise discretion, including situations where they must choose whether to exercise force against a prisoner. When force is used, a corrections officer must also exercise discretion to determine the appropriate amount of force.[104] Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[105] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[106] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.[107]

Plaintiff alleges that, while he was standing stationary as ordered in the tierway in full restraints (*i.e.*, shackles and hand cuffs) wearing a suicide gown, Holden began yelling at Plaintiff to get on the ground. Plaintiff attempted to comply but had difficulty due to the restraints and gown. Holden then "tackled [Plaintiff] with extreme force and, once [Plaintiff] was pinned to the ground,

---

[103] The ordering of a *Schultea* reply is discretionary. *Avila v. Harlingen Independent Consolidated School District*, No. 21-111, 2021 WL 5921458, at *8 (S.D. Tex. Nov. 22, 2021) (citations omitted). As several of Plaintiff's claims are being dismissed subject to re-urging with adequate facts, Defendants' request for a *Schultea* reply will be denied.

[104] *See, e.g., Henry v. North Texas State Hospital*, No. 12-cv-198, 2013 WL 3870292, at *3 (N.D. Tex. July 9, 2013) ("Qualified immunity is available to public officials such as prison guards and state hospital employees who must exercise discretion.").

[105] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992).

[106] *Wilkins*, 559 U.S. at 38.

[107] *Hudson*, 503 U.S. at 7.

21

Captain Holden began to repeatedly bash [Plaintiff's] head into the floor."[108]  Plaintiff contends that "the use of [this] excessive physical force….was without provocation by [Plaintiff] and lacking in any justifiable cause  and/or reasoning."[109]

At the time of this tackling Incident, it was clearly established that an officer may not use force on a restrained, compliant inmate.[110]  Taking the facts in the light most favorable to Plaintiff, he was fully restrained and compliant when Holden tackled him, pinned him to the ground, and "bashed" his head into the floor.  For § 1915A screening purposes, Plaintiff has asserted a colorable claim of excessive force against Holden.[111]

### 3.  Smith and Woolfolk's Failure to Intervene When Holden Tackled and Beat Plaintiff

Under the Eighth Amendment to the United States Constitution, a defendant security officer may be found responsible for a failure to intervene and to take reasonable measures to protect an inmate from another officer's use of excessive force under a theory of bystander liability.  An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.[112]

The Complaint alleges that Woolfolk and Smith "stood by watching this altercation," *i.e.*, when Holden charged, tackled and beat Plaintiff's head onto the floor in the tierway where all of the Acting Defendants were standing, "and failed to intervene," despite that Plaintiff had "remained

---

[108] R. Doc. 1-1, ¶¶ 14-19.
[109] R. Doc. 1-1, ¶ 28.
[110] *See Aucoin v. Cupil*, No. 16-373, 2018 WL 1547347, at *3 (M.D. La. Mar. 29, 2018) (finding that "Plaintiff has adequately demonstrated that Defendants may have used excessive force by punching and kicking Plaintiff even after he complied with their orders and was handcuffed," and holding: "Defendants are also not entitled to qualified immunity because at the time of the incident, it was clearly established that inmates have a constitutional right to be free from the use of excessive force, and it is objectively unreasonable to assault a compliant and restrained inmate.").
[111] Accordingly, a motion by Holden asserting qualified immunity in response to this claim is unlikely to prevail.  *See, e.g., Aucoin, above.*
[112] *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), citing *Hale v. Townley*, 45 F.3d 914, 916 (5th Cir. 1995).

essentially stationary," was "fully restrained by shackles and handcuffs," and "attempted to comply."[113]

Defendants contend that a *Schultea* reply in the form of an amended complaint is necessary so that Plaintiff can assert "allegations of fact focusing specifically on the conduct of the individual who caused [his] injury."[114] According to Defendants, Plaintiff admitted that he did not follow Holden's order to get on the ground, so Plaintiff must explain how Woolfolk would have known that using force to tackle Plaintiff to the ground was unnecessary. Similarly, Plaintiff did not allege how many times Holden beat Plaintiff's head on the ground or how long that episode lasted, so Plaintiff must plead facts to show Woolfolk had a plausible opportunity to intervene. Defendants contend that Plaintiff's unsupported and conclusory allegations fail to overcome the defense of qualified immunity.[115] Plaintiff contends that the Complaint adequately alleges that Woolfolk was present and watching when Holden tackled and beat Plaintiff, which is sufficient to state a claim for § 1983 bystander liability.[116] Plaintiff argues that he is not required to allege the degree of specificity requested by Defendants, *i.e.*, the number of times Holden bashed his head into the ground.[117]

Both Plaintiff and Defendants recognize that an officer who is present at the scene and does not take reasonable measures to protect an individual from another officer's use of excessive force may be liable under section 1983.[118] Taking the allegations in the Complaint as true, Plaintiff did not

---

[113] R. Doc. 1-1, ¶¶ 15, 17-18, and 20.

[114] R. Doc 4-1, p. 10, citing *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). Fed. R. Civ. P. 7(a) replies have been ordered in response to motions to dismiss raising the defense of qualified immunity (in addition to answers raising the defense). *See, e.g., Reyes*, 168 F.3d at 160.

[115] R. Doc. 4-1, pp. 12-13.

[116] R. Doc. 8, pp. 15-16 citing R. Doc. 1-1, ¶¶ 11, 14, 16, and quoting ¶ 20: "SERGEANT SMITH and CADET WOOLFOLK stood by watching this altercation and failed to intervene in any meaningful manner."

[117] R. Doc. 8, p. 16. Similarly, Plaintiff contends that Woolfolk is also not entitled to state law immunity provided by La. R.S. 9:2798.1 (which is quoted in Plaintiff's opposition at R. Doc. 8, p. 17) because Plaintiff has pleaded facts to show that Woolfolk took actions that were "criminal,… malicious, intentional, willful…" etc., which are not protected by the statute. Plaintiff argues that La. R.S. 9:2798.1 does not provide immunity against vicarious liability claims, and Defendants' failure to maintain safe confinement conditions and to obtain timely medical care for Plaintiff remain viable state law negligence claims. R. Doc. 8, p. 18. However, Defendants have not raised La. R.S. 9:2798.1 immunity (only qualified immunity under Louisiana law in response to the constitutional claims), and therefore this Ruling does not reach this issue.

[118] R. Doc. 4-1, p. 12 and R. Doc. 8, p. 16, both citing *Hale,* 45 F.3d at 919.

admit that he failed to comply, but rather alleged that he attempted to comply. Plaintiff further alleged that Woolfolk and Smith personally observed Holden charging, tackling and beating Plaintiff's head onto the floor while Plaintiff was fully restrained and stationary.[119] These allegations sufficiently allege, at this stage, a claim that Woolfolk and Smith failed to intervene despite that they were physically present and in close enough proximity to watch while Holden allegedly used excessive force against the fully-restrained, stationary, and compliant Plaintiff.[120] The Motion will be denied as to this part of the failure to intervene claim against Woolfolk.

### 4.  Excessive Force When Holden Dragged and Sprayed Plaintiff

The Complaint alleges:

> CAPTAIN HOLDEN then proceeded to drag JARIUS WINGARD by his restraint belt into a nearby cell, causing additional injury and ripping the prison-issued attire. JARIUS WINGARD was placed in Cell #9, double bunked, on suicide watch. JARIUS WINGARD remained in full restraints when CAPTAIN HOLDEN ordered him to the cell bars. Once at the cell bars JARIUS WINGARD was subject to several bursts of chemical control agent released by CAPTAIN HOLDEN into JARIUS WINGARD'S face and body….The use of the ….chemical agents was without provocation by [Plaintiff] and lacking in any justifiable cause….[121]

Like Plaintiff's allegations of excessive force when Holden tackled and beat him, these allegations sufficiently assert a claim that Holden dragged, and then sprayed chemical agent on, a fully compliant and restrained inmate who was behind cell bars. Therefore, for § 1915A screening purposes, Plaintiff has asserted a colorable claim of excessive force against Holden in connection with his claim of being dragged and sprayed with chemical agent.

### 5.  Smith and Woolfolk's Failure to Intervene When Holden Dragged and Sprayed Plaintiff

---

[119] R. Doc. 1-1, ¶¶ 15-20.

[120] See, e.g., Taplette v. LeBlanc, No. 18-853-EWD, 2019 WL 1560444, at *6 (M.D. La. Apr. 10, 2019) (holding that the plaintiff sufficiently alleged a claim of bystander liability when a sergeant was present and watched while two unknown officers beat the restrained plaintiff.). The allegations are sufficient to overcome Woolfolk's defense of qualified immunity at this point, and are, likewise, sufficient to state a cognizable bystander liability claim against Smith.

[121] R. Doc. 1-1, ¶¶ 21-23, and 28 (paragraph numbers omitted).

Defendants contend that Plaintiff did not allege that Woolfolk was present when Holden sprayed Plaintiff with chemical agent, which fails to overcome the defense of qualified immunity.[122] Plaintiff contends that the Complaint adequately alleges that Woolfolk was present and watching when Holden sprayed Plaintiff with chemical agent and failed to intervene, which is sufficient to state a claim for § 1983 bystander liability.[123]

Unlike the claim related to Holden's alleged tackling and beating him, the Complaint does not specify whether Woolfolk and/or Smith personally witnessed Holden dragging Plaintiff and spraying Plaintiff with chemical agent, as that occurred while Holden moved Plaintiff from the tierway into a cell and after Plaintiff was behind the cell bars.  Because it is not clear whether Woolfolk and Smith were present during, and/or observed, these actions such that they had knowledge and an opportunity to intervene, this claim will be dismissed without prejudice.  In lieu of a Fed. R. Civ. P. 7(a) reply, Plaintiff will be permitted leave to file an amended complaint, providing facts supporting his claim that Woolfolk and Smith failed to take reasonable measures to intervene in connection with Holden dragging Plaintiff and spraying Plaintiff with chemical agent, if possible.

### 6.  Smith, Woolfolk, and/or Holden Failed to Provide Medical Care to Plaintiff

The Complaint alleges:

> Defendants refused and/or failed to secure medical treatment for JARIUS WINGARD'S injuries sustained in related to the above-discussed interaction. After the next officer shift, JARIUS WINGARD was eventually taken for medical treatment, however, the medical treatment rendered was woefully inadequate.  Despite numerous requests made thereafter, JARIUS WINGARD was prevented from seeing a physician for several days.[124]

Plaintiff asserts that the Acting Defendants refused to provide medical care for some period of time, delayed his access to medical care, and the care subsequently given was inadequate. "[D]elay in

---

[122] R. Doc. 4-1, pp. 12-13.
[123] R. Doc. 8, pp. 15-16, citing R. Doc. 1-1, ¶¶ 11, 14, 16, and quoting ¶ 20: "SERGEANT SMITH and CADET WOOLFOLK stood by watching this altercation and failed to intervene in any meaningful manner."
[124] R. Doc. 1-1, ¶¶ 25-27 (paragraph numbers omitted).

medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."[125] Similarly, "inadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."[126] Thus, to establish liability in connection with a claim for deliberate medical indifference, a prisoner-plaintiff must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[127] "Deliberate indifference is an extremely high standard to meet."[128] In order to prevail, the plaintiff must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[129] Further, the plaintiff must establish that the defendant possessed a culpable state of mind. For a prison official to be held liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[130] "Mere negligence, neglect, or medical malpractice" does not constitute deliberate indifference.[131] Even "gross negligence" does not establish deliberate indifference.[132] Rather, "subjective recklessness as used in the criminal law" is the appropriate standard for "deliberate indifference" under the Eighth Amendment."[133]

---

[125] *Mendoza,* 89 F.2d at 195.

[126] *Harris v. Hegmann,* 198 F.3d 153, 159 (5th Cir. 1999), citing *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (internal quotation marks omitted) (alterations in original) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

[127] *Cormier v. Edwards,* No. 17-241, 2019 WL 2438784, at *2 (M.D. La. June 11, 2019), citing *Estelle,* 429 U.S. at 106 and *Johnson v. Treen,* 759 F.2d 1236, 1237 (5th Cir. 1985).

[128] *Cormier,* 2019 WL 2438784 at *2, citing *Domino v. Texas Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001).

[129] *Cormier,* 2019 WL 2438784 at *2, citing *Domino,* 239 F.3d at 756 (other citations omitted).

[130] *Cormier,* 2019 WL 2438784 at *2, citing *Farmer v. Brennan,* 511 U.S. 825, 837-38 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).

[131] *Cormier,* 2019 WL 2438784 at *2, citing *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991).

[132] *Cormier,* 2019 WL 2438784 at *2, citing *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.,* 380 F.3d 872, 882 (5th Cir. 2004).

[133] *Cormier,* 2019 WL 2438784 at *2, citing *Farmer,* 511 U.S. at 839-40.

Plaintiff has only generally alleged that his initial treatment was refused and/or delayed until after the officer shift change, that the treatment then given was inadequate, and that he was prevented from receiving additional treatment for several days. The Complaint does not identify the officers from whom Plaintiff requested treatment, the officers who refused/delayed his treatment, the amount of time that treatment was delayed, how the delay in treatment harmed him, or the reasons that his treatment was inadequate.[134]   The Complaint also provides no details regarding Plaintiff's alleged injuries, other than to assert requests for boilerplate damages, *i.e.*, pain and suffering, mental distress, disability, etc.[135] Because Plaintiff has not alleged facts to support the elements of a deliberate medical indifference claim, that claim will be dismissed under § 1915A, subject to Plaintiff filing an amended complaint that adequately pleads factual details in support of this claim, if possible.

### H.  Plaintiff Will Be Given Leave to Amend to Correct the Noted Deficiencies

The Federal Rules of Civil Procedure provide that leave to amend should be "freely given when justice so requires," so Plaintiff will be allowed to amend his Complaint, only as to the claims for which amendment is specifically permitted in this Ruling and Order.[136] The Fifth Circuit has held that "unless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial."[137]   Defendants do not argue that any of these reasons are present in this case, and indeed, in some instances, request that Plaintiff provide more facts in support of his claims.[138]

---

[134] In brief, Plaintiff appears to contend that it was Woolfolk and Smith who failed to secure medical treatment: "…these Defendants refused and/or failed to secure medical treatment for Plaintiff's injuries," (apparently referring to Smith and Woolfolk, who were named in the prior sentence). R. Doc. 8, p. 3.

[135] R. Doc. 1-1, ¶¶ 26-27, 47.

[136] *Dunn,* 2021 WL 3204741, at *5, citing Fed. R. Civ. P. 15(a).

[137] *Id,*  citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999).

[138] R. Doc. 4-1, pp. 13-14.

### III. CONCLUSION

**IT IS ORDERED** that the Motion to Dismiss and For A More Definite Statement,[139] filed by Defendants the Department of Public Safety and Corrections and Ryan Woolfolk is **GRANTED IN PART.** Pursuant to the Motion to Dismiss and screening of the Complaint under 28 U.S.C. § 1915A, the following claims of Plaintiff Jarius Wingard are **DISMISSED WITH PREJUDICE**: (1) all of Plaintiff's claims against Louisiana State Penitentiary, which the Clerk of Court is instructed to **TERMINATE** as a defendant; (2) all of Plaintiff's federal claims against Darrel Vannoy, Brent Thompson, and the State of Louisiana through the Department of Public Safety and Corrections, including those asserted under 42 U.S.C. § 1981 *et. seq.* and 42 U.S.C. § 1983, and (3) Plaintiff's double-bunking claim against Ryan Woolfolk and Brian Smith.

**IT IS FURTHER ORDERED** that the following claims of Plaintiff Jarius Wingard are **DISMISSED WITHOUT PREJUDICE**: (1) Plaintiff's state law claims against Vannoy, Thompson, and DPSC; (2) Plaintiff's 42 U.S.C §1981 claims against Holden, Smith, and Woolfolk; (3) Plaintiff's 42 U.S.C. § 1983 conspiracy claims against Holden, Smith and Woolfolk; (4) Plaintiff's claims in Complaint paragraphs 36-38, including state law negligence claims; (5) Plaintiff's failure to intervene claim against Woolfolk and Smith associated with Holden dragging Plaintiff and spraying Plaintiff with chemical agent; and (6) Plaintiff's claim that Woolfolk, Smith and/or Holden failed to provide adequate medical care.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-one (21) days from the date of this Ruling to amend his Complaint to cure the deficiencies as to any claim that was dismissed without prejudice. Plaintiff's failure to amend his Complaint within the deadline will convert all dismissals to be with prejudice. Any relief requested that is not specifically addressed is **DENIED**.

---

[139] R. Doc. 4.

**IT IS FURTHER ORDERED** that the Motion to Dismiss and For A More Definite Statement[140] filed by Warden Darrell Vannoy is **DENIED AS MOOT**, in light of the disposition of the Motion to Dismiss, filed by Defendant DPSC, which raises the same arguments.

Signed in Baton Rouge, Louisiana, on March 29, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[140] R. Doc. 20.